LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Ronald and Melissa Desselle were married in 1998 and separated in 2007. Two children were born of the marriage. Ronald and Melissa were granted an irreconcilable-differences divorce by the Pearl River County Chancery Court on October 13, 2008. Melissa was given physical custody of the couple’s two children, and Ronald was ordered to pay $436 per month in child support.
 

 ¶ 2. Ronald now appeals, asserting the following issues: (1) the chancellor erred in awarding Melissa primary custody of the children; (2) the chancellor failed to give sufficient weight and credibility to the court-appointed expert; and (3) the chancellor erred in admitting testimony from two expert witnesses hired by Melissa. Finding no error, we affirm the judgment of the chancellor.
 

 FACTS
 

 ¶ 3. Ronald lives in the marital home in Picayune, Mississippi. The couple’s older son, who was six years old, lived with Ronald during the separation. Melissa
 
 *856
 
 lives in Violet, Louisiana. The couple’s younger son, who was three years old, lived with Melissa during the separation. Ronald’s sister and father live in Violet, as well as Melissa’s mother and sister. At the time of trial, Melissa had planned to purchase a home two houses down from her sister. Melissa’s sixteen-year-old daughter from a prior marriage lives with her. Ronald has a child from a previous relationship, but he does not maintain contact with this child.
 

 ¶4. Ronald testified that the marriage had dissolved mostly due to Melissa’s emotional problems. Melissa felt that the marriage had dissolved because of Ronald’s anger issues. She testified that the marriage ended in August 2007 when she and Ronald had gotten into an argument over the whereabouts of Melissa’s daughter. Melissa stated that Ronald told her to “do him a favor, and go ahead and kill herself.” Melissa testified that she had tried to prevent Ronald from leaving twice, but both times he knocked her down and walked over her. Two days after the argument, Melissa admitted herself to the hospital for depression and panic attacks.
 

 ¶ 5. Melissa testified that she had experienced emotional problems after the birth of the couple’s first child. Melissa believed that her stress was partially due to the couple’s home being destroyed in Hurricane Katrina. She testified that the stress of the hurricane coupled with arguments between her and Ronald had caused her to become depressed. She stated that Ronald put her on an unrealistic budget, and she had a difficult time taking care of herself and the children. She also stated that he had told her coworkers she was a drug addict and had cheated on him. At the time of trial, the chancellor noted that Melissa was still receiving some psychological treatment for anxiety and depression, but she had made great strides and was stable.
 

 STANDARD OF REVIEW
 

 ¶ 6. This Court “will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous!,] or an erroneous legal standard was applied.”
 
 Sanderson v. Sanderson,
 
 824 So.2d 623, 625-26 (¶ 8) (Miss.2002) (citation omitted).
 

 DISCUSSION
 

 I.
 
 ALBRIGHT
 
 FACTORS
 

 ¶ 7. Ronald argues that the chancellor misapplied the facts when weighing the
 
 'Albright
 
 factors.
 

 ¶8. In child-custody cases, the polestar consideration is the best interest of the child.
 
 Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983). In
 
 Albright,
 
 the Mississippi Supreme Court set out factors to be used to determine what is in the “best interest” of a child with regard to custody.
 
 Id.
 
 The
 
 Albright
 
 factors are: (1) age, health, and sex of the child; (2) a determination of which parent had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which parent has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of parent and child; (7) the moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship.
 
 Id.
 

 
 *857
 
 ¶ 9. The chancellor found the following five factors to favor neither party: age, health, and sex of the children; continuity of care; parenting skills; employment of the parents and the responsibilities of employment; and emotional ties of the parent and children. The preferences of the children were not considered since neither child was of an appropriate age to state a preference.
 

 ¶ 10. The chancellor found that the following four factors favored Melissa: willingness and capacity to provide primary care; the moral fitness of the parents; the home, school, and community record of the children; and other relevant factors. The chancellor considered it significant that Melissa had taken the initiative to seek treatment for her emotional issues. She had also overcome several tragedies in her life while maintaining a job with a substantial salary. Ronald was favored in the following two factors: mental and physical health and age of the parents and stability of the home environment.
 

 ¶ 11. Ronald argues that the age and sex of the children, two boys who were ages six and three, should have weighed in his favor. In the past, this Court has given favor to fathers seeking custody of their male children.
 
 Parker v. South,
 
 913 So.2d 339, 348 (¶ 29) (Miss.Ct.App.2005). This Court has reasoned that it is implicit that “a young male will need the guidance and care of his father as he matures.... ”
 
 Id.
 
 However, we also take into account the young age of the children. While the tender-years doctrine has been weakened, it is still a consideration.
 
 Lee v. Lee,
 
 798 So.2d 1284, 1289 (¶ 17) (Miss.2001). The tender-years doctrine “essentially states that if the mother of a child of tender years (i.e., early in development) is fit, then she should have custody.”
 
 Id.
 
 Ronald and Melissa’s youngest child, who was three years of age at the time of trial, would have fallen under the tender-years doctrine.
 
 Id.
 
 (finding a child two and one-half to three years old to be subject to the tender-years doctrine). We find that the chancellor did not err in finding this factor neutral.
 

 ¶ 12. Ronald next argues that the willingness and capacity to provide primary care should have weighed in his favor. He asserts that the chancellor had misstated his work hours, which were 7:30 a.m. until 3:30 p.m. The chancellor' noted that Ronald’s work hours were unclear at the time of trial because he was starting a new job. Melissa’s work hours were from 7:00 a.m. to 3:30 p.m. The chancellor weighed this factor in Melissa’s favor because several family members lived nearby who were willing to help with childcare.
 

 ¶ 13. Ronald also argues that the home, school, and community record should have weighed in his favor. He argues that he lives in the country in a good school district and that Melissa lives in a housing project in Louisiana. He felt that he presented a stable environment for the children but that Melissa was erratic and unstable.
 

 ¶ 14. Ronald alleges that Melissa is unstable because she suffers from anxiety and depression. Despite Ronald’s arguments that Melissa was a less suitable caretaker due to various medication, there was ample testimony that put Ronald’s parenting into question. Melissa testified that Ronald was overbearing and controlling. Melissa’s daughter corroborated this testimony and also testified that Ronald had made inappropriate advances toward her. As for Melissa’s mental health, Dr. Delsie Bonano, Melissa’s therapist, testified that Melissa was no longer suffering from depression or anxiety. Dr. Bonano opined that Melissa was a good mother and was not a threat to her children.
 
 *858
 
 Steve Headrick, the guardian ad litem, also testified that Melissa had no issues that would affect her ability to be a good parent. Regardless, the chancellor still weighed this factor in Ronald’s favor because Melissa was on medication for depression.
 

 ¶ 15. Dr. M. Carmen Palazzo, a psychiatrist, testified that she was concerned by Ronald’s behavior when caring for the children, which included leaving the children unattended for long periods of time and buying the children cigarettes. Dr. Palaz-zo testified that Ronald had “difficulty with anger” which had resulted in abusive behavior. Also, there was testimony concerning Ronald’s dating an eighteen-year-old. Melissa’s daughter testified that Ronald sometimes had “girls” over who would spend time in Ronald’s bedroom.
 

 ¶ 16. After weighing all the factors, the chancellor found that it was in the children’s best interests for Melissa to have primary custody. Melissa’s depression was taken into consideration, and the chancellor weighed the mental and physical health of the parents in favor of Ronald. We cannot find that the chancellor abused his discretion in finding that Melissa should have primary custody of the children. The findings made by the experts were all consistent. They each found that Melissa was a good mother who had been victimized by an abusive husband, and the abuse had led to her treatment for depression. The chancellor’s findings were supported by substantial evidence. This issue is without merit.
 

 II. EXPERT TESTIMONY
 

 ¶ 17. Ronald argues that the chancellor did not give sufficient weight to Dr. John Pat Galloway’s testimony that Ronald was the more stable parent.
 

 ¶ 18. Dr. Galloway, a psychologist, was appointed by the chancellor to make a recommendation regarding child custody. Dr. Galloway did not make a definitive recommendation for custody; instead, he stated: “[Ronald] presents himself as the most stable parent[,] and [Melissa] presents herself as the most loving and caring parent.” Dr. Galloway had both positive and negative findings about Ronald and Melissa. Dr. Galloway’s only recommendation was that the children should be placed together. He found that both parents had the best interests of the children at heart. He stated that the deciding factors should be the support system for the children and which school they would attend. Dr. Galloway expressed concern that Ronald lacked a support system. Dr. Galloway stated that the school the oldest child attended “seem[ed] to be the better school,” but “he’s only in the 1st grade, so ... now is the time to move him rather than let him stay for the whole year.”
 

 ¶ 19. We cannot find that the chancellor abused his discretion in the weight he gave to the expert’s testimony. While Dr. Galloway stated that Ronald’s home environment was more stable, he did not make a definitive recommendation. He found that either parent would be suitable. The testimony of the other experts was consistent with Dr. Galloway’s testimony. The only expert who made a definitive recommendation was Dr. Palazzo, who recommended that Melissa have primary custody. This issue is without merit.
 

 III. EXPERTS’ RELIANCE ON THE
 
 ALBRIGHT
 
 FACTORS
 

 ¶ 20. Ronald argues that the testimony of both experts hired by Melissa should be excluded because the experts did not perform an
 
 Albright
 
 analysis before issuing their recommendations. We find this argument without merit as it is the duty of the chancellor, not the expert, to review
 
 *859
 
 and weigh the
 
 Albright
 
 factors.
 
 Albright,
 
 437 So.2d at 1005.
 

 ¶ 21. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.